The Law Offices of Jacob Aronauer
225 Broadway, 3rd Floor
New York, New York 10007
(212) 323-6980
jaronauer@aronauerlaw.com

August 1, 2022

**Via ECF**
Hon. Paul G. Gardephe
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, New York 10007

>    Re:   *Marroquin et al. v. 723 Edibles, Inc. et al.*
>          21-cv-07566 (PGG) (KHP)

**MEMO ENDORSED**

The parties' settlement agreement is approved by the Court.

SO ORDERED:

Paul G. Gardephe, U.S.D.J.
Dated: Sept. 19, 2022

Dear Judge Gardephe:

This letter is respectfully submitted on behalf of Plaintiff Luis Marroquin and Defendants 723 Edibles, Inc. d/b/a TSQ Brasserie and Solomon Benmoha (the "723 Defendants") in the above-captioned matter, seeking the Court's approval of the settlement reached between the parties, per the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199 (2d Cir. 2015), as Plaintiff's claims arise under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). This settlement agreement does not include Defendant Joseph Benmoha where the parties have reached a separate settlement.

The parties have memorialized and executed a settlement agreement which will discontinue the above-captioned case, with prejudice, in exchange for a payment by the 723 Defendants to Plaintiff for $31,864.42 over 12 months in satisfaction for all claims raised in this action. Pursuant to the terms of the settlement agreement, Plaintiff will receive $20,976.28 and Plaintiff's counsel will retain $10,888.14 in fees. A copy of the signed settlement agreement is annexed as Exhibit A.

The payment is secured by Defendants signing an affidavit of confession of judgment for 1.5 times the amount owed minus any payments made. This provides Plaintiff a fair amount of security that the 723 Defendants will honor the terms of the settlement agreement.

### Claims and Defenses

It is submitted that there are several factual and legal disputes between the parties which could ultimately impact each party's ability to prevail if this case proceeded to dispositive motion practice or to trial.

**Plaintiff's Position**

Plaintiff commenced this action seeking unpaid wages pursuant to the FLSA and NYLL, as well as damages for alleged wage notice and wage statement violations. Plaintiff worked as a kitchen worker on behalf of the 723 Defendants.

Plaintiff alleges that he was not paid time and one half for all work performed after 40 hours, for part of his employment he was not paid the applicable minimum wage and is still owed at least $370 from Defendants in unpaid wages. In support of his position that he was not paid overtime in compliance with the FLSA and NYLL, Plaintiff claimed to have been paid through a combination of check and cash.

Plaintiff believes that his best-case scenario is $44,187.10 in unpaid wages, liquidated damages, and notice damages. Based on the above, we believe that Plaintiff receiving roughly 75% of his best scenario is a strong result.

**Defendants' Position**

Solomon Benmoha was not Plaintiff's employer; rather he was a silent business partner in 723 Edibles Inc., which operated a restaurant (TSQ) in Times Square. Mr. Benmoha was not involved in the day-to-day operations of the restaurant, nor did he have involvement in, let alone make any decision, regarding Plaintiff's employment. 723 Edibles Inc. closed during the pandemic and has no remaining assets. Defendants deny each of Plaintiff's claims regarding how he was paid and contend that Plaintiff did not work as many hours as he alleges.

### The Settlement Terms

Pursuant to the Settlement Agreement, the parties have agreed to the following break-down as to payment of the total $31,864.42 settlement amount:

- Plaintiff: $20,976.28
- Attorneys' fees and expenses: $10,888.14

Within thirty days of: (i) the District Court issuing an order approving the parties' fully executed agreement and dismissing this matter with prejudice, (ii) the receipt, by the 723 Defendants' counsel, of a fully completed and executed IRS form W-9 from Plaintiff and Plaintiff's counsel, and (iii) and the receipt, by the 723 Defendants' counsel, of a fully completed and executed IRS form W-4 from Plaintiff, the 723 Defendants shall make the first of 12 monthly installment payments. To secure payment, the parties have agreed that the 723 Defendants (both individually and on behalf of the corporation) will sign an affidavit of confession of judgment for 1.5 times the amount owed plus reasonable attorney fees in the event of a breach minus any payments owed in the event that they fail to timely make payments.

The parties believe this settlement to be a fair resolution to this litigation, due to the disputes about the value of Plaintiff's claims.

2

## The Settlement Should be Approved

The standard for approval of FLSA settlement is well-established in the Second Circuit. As stated by the court in *Serebryakov v. Golden Touch Transp. of NY. Inc.*, No. 12-3990 (NGG)(RER), 2013 WL 3364393, at *2 (E.D.N.Y. 2013), "[i]n the absence of a certified class, a district court typically considers the following factors to determine whether a settlement of individual FLSA claims is reasonable: (1) the complexity, expense, and likely duration of litigation; (2) the stage of the proceedings and the amount of discovery completed; (3) the risks of establishing liability; (4) the risks of establishing damages; (5) the ability of defendants to withstand a larger judgment; and (6) the range of reasonableness in light of the best possible recovery and all the risks of litigation." Id. at *2 (citations omitted); *see also Diaz v. Scores Holding Co.*, No. 07-8718 (THK), 2011 WL 6399468, at *2 (S.D.N.Y. 2011) ("Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes...Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, courts will approve the settlement") (citations omitted).

Based on the bona fide disputes as to the value and viability of Plaintiff's claims, as well as the inherent risks of trial, the parties respectfully submit that the Settlement Agreement represents a fair and reasonable settlement of Plaintiff's claims in this action.

As set forth above, while Plaintiff believes he would prevail on his claims, he acknowledges that he faces significant risk in establishing liability and damages should this case proceed. Plaintiff is cognizant of the risks and uncertainty of protracted litigation, motion practice, potential appeals, and other factors that might affect his ability to recover on any of the claims asserted in this action. Since the 723 Defendants insisted that Plaintiff was paid for all hours worked, Plaintiff risked spending a tremendous amount of time and energy without obtaining a recovery.

One of the major issues that lead to a relatively fast settlement was the fact that TSQ Brasserie appears to have closed. While we believe that Joseph Solomon has since opened at least one new restaurant, there are significant concerns about his ability to pay. Many restaurants have suffered due to Covid and it appears that TSQ was a Covid casualty. Thus, under the circumstances, full payment over the span of 12 months after the Court granting final approval is a reasonable outcome.

It is respectfully submitted that approval of this settlement is warranted because it is the product of arms-length negotiations between parties represented by knowledgeable and experienced counsel who focus their respective practices on wage and hour litigation. *Wolinsky v. Scholastic, Inc.*, 900 F.Supp.2d 322 (S.D.N.Y. 2012). Throughout the course of those negotiations, the parties shared their respective views on the validity and potential value of the claims, and ultimately reached a deal that both sides felt, given the risks associated with protracted litigation, was a fair compromise.

The settlement agreement submitted for approval is in line with the mandates of *Cheeks*. The Agreement does not contain a confidentiality provision; the Agreement only provides for a release of NYLL and FLSA claims up to the date of the signing of the Agreement; and Plaintiff's attorneys' fees will be 1/3 of the total settlement after reimbursement for the filing fee. Since the

matter settled relatively quickly, Plaintiff's counsel is not seeking to be reimbursed for the cost of service which enables Plaintiff to receive an additional $150.

The amount Plaintiff's counsel is seeking is in line with 30% to 33.33% in FLSA cases. *See Santos v EL Tepeyac Butcher Shop, Inc.*, 2015 WL 90712, at *4 (S.D.N.Y. Dec. 15, 2015). Courts in this circuit have also held that a one-third contingency fee satisfies the broad remedial purposes of the FLSA and the NYLL. *See Khait v. Whirpool Corp.*, No. 06-6381 (ALC), 2010 WL 2025106 (E.D.N.Y. 2010).

To this end, Plaintiff's counsel represents clients (the present plaintiff included) on a contingency-fee basis, calculated during this case at 1/3 of after reimbursement of expenses. This is slightly less than the rate agreed upon by Plaintiff and counsel at the outset via a retainer agreement (which again was the standard 1/3 after reimbursement of expenses) because Plaintiff's counsel has not sought to be reimbursed for all expenses. To date, Plaintiff's counsel bore all costs of litigation without compensation of any kind as his fee has been wholly contingent upon the result achieved.

Plaintiff's attorney's time and labor warrant the requested fee. The facts surrounding this settlement is different. Plaintiff simultaneously settled his matter along with two separate Claimants who had similar claims against the 723 Defendants. In that matter, the Claimants defeated Defendants' motion for summary judgment in arbitration and were prepared to move forward to trial. The 723 Defendants sought to simultaneously resolve both actions. Plaintiff admittedly benefited from the status of the case in the separate matter.

Overall, Plaintiff's counsel performed the following work. Plaintiff's counsel met with Plaintiff to learn relevant facts; (2) drafted and filed the Complaint; (3) regularly communicated with Plaintiff to keep him updated regarding the progress of the case; (4) prepared damage calculations; (5) prepared a pre-mediation statement; (6) represented Plaintiff in a mediation through the SDNY mediation program; (7) edited the settlement agreement; (8) met with the client to discuss the terms of the settlement agreement; and (9) drafted the *Cheeks* settlement letter.

As set forth supra, Plaintiff faced a risk of loss based on disputed legal and factual issues. Moreover, Plaintiff's attorney took this case pursuant to retainer agreements with Plaintiff that stated that counsel would receive a percentage of the recovery only if Plaintiff obtained a recovery.

Accordingly, Plaintiff's counsel faced a risk of receiving little or no payment for their work depending on the outcome of the underlying claims. Thus, the magnitude, complexities, and risks of the litigation weigh in favor of approving the requested fee.

Plaintiff's counsel has extensive experience representing employees in wage and hour actions. I deal almost exclusively in employment law. I received my J.D. from Suffolk University Law School in 2005 and formed The Law Offices of Jacob Aronauer in 2013. Prior to starting my own practice, I worked at New York law firms, as well as the New York City Mayor's Office of Labor Relations for over four years, where I represented New York agencies.

As noted earlier, Plaintiff's attorneys' fees in this matter are $10,888.14. My hourly rate is $415.00, and paralegals in my firm charge $165.00. In 2022, this hourly rate has been agreed

4

to between my firm and management side clients involving wage and hour disputes. An hourly rate of $400 was previously approved in *Rossy's Bakery & Coffee Shop, Inc.,* 2021 U.S. Dist. LEXIS 61289, at *29 (S.D.N.Y. Mar. 30, 2021).

Plaintiff's counsel's time records are annexed as Exhibit B.

Plaintiff's lodestar calculation is 1.22, based on $10,488.14 in attorneys' fees. *See Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp.3d 424, 439 (S.D.N.Y. 2014) (Honorable William H. Pauley III concluded that a "multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases."). While admittedly the lodestar calculation is not near two, as noted earlier Plaintiff has benefited from work performed in the separate lawsuit against Defendants. Furthermore, the Court should not punish Plaintiff's counsel from efficiently obtaining a strong resolution.

Finally, the FLSA is a remedial statute designed to protect employees from unfair labor practices. 29 U.S.C. $ 202(a). A fair attorneys' fee award that considers the services provided and the risks undertaken furthers these remedial purposes. For the reasons set forth above, we respectfully request that the Court approve the attorneys' fees and costs set forth in the settlement agreement.

## Conclusion

Considering the foregoing, the parties respectfully submit that the proposed settlement amount is fair and reasonable, and further, that the terms of the settlement agreement comport with the requirements under the FLSA and NYLL. The parties respectfully request that the Court approve the settlement, and so-order the Stipulation and Order of Dismissal with Prejudice attached as Exhibit C.

We thank the Court for its time and consideration.

Respectfully submitted,

By: */s Jacob Aronauer*
Jacob Aronauer, Esq.

Attachments

cc: All Counsel (via ECF)